**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JANE DOE,

                    Plaintiff,

      v.

DREXEL UNIVERSITY; INDEPENDENCE
BLUE CROSS; QCC INSURANCE
COMPANY; PERSONAL CHOICE HEALTH
BENEFITS PLAN, A COMPREHENSIVE
MAJOR MEDICAL GROUP CONTRACT,
BY AND BETWEEN QCC INSURANCE
COMPANY, A PENNSYLVANIA
CORPORATION, AND  DREXEL
UNIVERSITY,

                    Defendants.

Case No. 23-3555

## COMPLAINT

Plaintiff, Jane Doe, by and through her undersigned counsel, Justin Robinette, Esquire, hereby submits and files the instant Complaint, averring in support thereof, as follows:

## THE PARTIES

1.    Plaintiff, Jane Doe (hereinafter "Plaintiff" or "Ms. Doe") is a citizen and resident of Philadelphia, Pennsylvania, residing at ███████████████████████. On the same date as the filing of this Complaint, Plaintiff has filed for the Court's consideration Plaintiff's Motion to Proceed Anonymously or Under Pseudonym, and to redact her home address from the pleadings.

2.    Defendant, Drexel University (hereinafter "Drexel University" or "Drexel") is a university with its headquarters and principal place of business located at 3141 Chestnut Street, Philadelphia, PA 19104.

3.    Defendant, Independence Blue Cross (hereinafter "Independence Blue Cross" or "IBX"), is

a health insurance company with its headquarters and principal place of business located at 1901 Market Street, Philadelphia, PA 19103.

4.     Defendant, QCC Insurance Company (hereinafter "QCC Insurance Company" or "QCC"), is a health insurance company with its headquarters and principal place of business located at 1901 Market Street, Philadelphia, PA 19103.

5.     Defendant, Personal Choice Health Benefits Plan, a Comprehensive Major Medical Group Contract, By and Between QCC Insurance Company, a Pennsylvania corporation, and Drexel University, is believed and averred to be the name of the health benefit plan established according to the Employee Retirement Income Security Act ("ERISA"), with respect to Plaintiff's employer-sponsored health insurance, identified on the plan documents as being located at 1901 Market Street, Philadelphia, PA 19103.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over the parties and claims pled herein pursuant to 28 U.S.C. § 1331.

7.     This Court has supplemental jurisdiction over related state law claims pled herein pursuant to 28 U.S.C. § 1367(a).

8.     This Court has jurisdiction over Defendants because Defendants' contacts with this state and judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Company v. State of Washington, 326 U.S. 310 (1945), and its progeny.

9.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

10.     At all times relevant hereto, Defendants each employed more than five hundred (500) persons for each working day in each of twenty (20) or more calendar weeks in the current or preceding calendar year.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11.     Plaintiff has exhausted all applicable administrative remedies and the pertinent Notice of Right-to-Sue in this matter is attached hereto as Exhibit "A."  Plaintiff's name and address have been redacted from Exhibit "A."

## MATERIAL FACTS

12.     Ms. Doe is transgender or trans.  Ms. Doe is a transgender woman.  Trans women identify as women.

13.     "Gender identity" is a clear and well-established medical concept that refers to one's sense of oneself as having a particular gender.

14.     Although many people who are designated male at birth based on external anatomy identify with the male gender, there are also people who do not identify with the sex that was assigned to them at birth.  Transgender women are women who were assigned "male" at birth but have a male gender identity and transgender men are men who were assigned "female" at birth but have a female gender identity.

15.     There are people who are transgender who experience feelings of incongruence between their gender identity and the sex they were assigned at birth, and experience distress as a result of that incongruence, which are symptoms of gender dysphoria ("GD").

16.     The psychological stress of being transgender may lead to a number of medical conditions including a condition known as gender dysphoria ("GD") which is a disability.

17.     Gender dysphoria is a serious medical condition codified in the *Diagnostic and Statistical Manual of Mental Disorders 5* (DSM-5) and *International Classification of*

*Diseases* (ICD-10).

18.     GD is a medical and therapeutic diagnosis "associated with clinically significant distress or impairment in social, occupational, or other important areas of functioning" for a person who is transgender.  *See Diagnostic and Statistical Manual of Mental Disorders*, 5th Ed. ("DSM-V" at 302.85); *see also* Coleman, E., *et al*., Standards of Care for the Health of Transgender and Gender Diverse People, Version 8, *International Journal of Transgender Health*, *23*(S1), S1-S260 (2022).

19.     Various medical procedures are available to assist transgender women to ensure a body that is more in congruence with their gender identity.  These procedures may also alleviate gender dysphoria.

20.     The widely accepted standards of care for treatment of gender dysphoria are published by the World Professional Association for Transgender Health ("WPATH").  The WPATH Standards of Care have been recognized as the authoritative standards of care by leading medical organizations, the U.S. Department of Health and Human Services, Federal courts, and the Pennsylvania Department of Human Services.

21.     Under the WPATH standards, medically necessary treatment for gender dysphoria may require facial feminization surgery ("FFS") and related procedures.

22.     According to every leading major medical organization and the overwhelming consensus among medical experts, treatment of gender dysphoria, including surgical procedures such as FFS procedures, are effective, safe, and medically necessary when clinically indicated to alleviate gender dysphoria.

23.     At all times relevant hereto, Defendant, Drexel University, was the Plaintiff's employer responsible for the provision of benefits to the Plaintiff including Defendant, Drexel

University's, employer-sponsored healthcare plan, and is required by City, State, and Federal non-discrimination laws to make insurance coverage available to individuals who are transgender, gender non-conforming, and/or who are diagnosed with gender dysphoria ("GD"), on an equal and non-discriminatory basis.

24.    At all times relevant hereto, Plaintiff was diagnosed with gender dysphoria ("GD"). Plaintiff is a transgender person who has been diagnosed with GD.

25.    The substantial limitation on Doe's interaction with others is characterized on a regular basis by severe problems in primarily social withdrawal, social functioning, suicide ideation, and Major Depressive Disorder ("MDD"), the latter of which Ms. Doe was diagnosed with on account of her gender dysphoria ("GD").

26.    Ms. Doe was clinically diagnosed with GD and has clinically significant distress associated with being transgender.  Ms. Doe is substantially limited in the major life activities of interacting with others, social functioning, caring for herself, concentrating, thinking, and working.

27.    At all times relevant hereto, Defendant, Independence Blue Cross, issued and had in place for the Plaintiff a policy of health insurance (hereinafter "the Policy" or "the subject Policy") to insure Plaintiff for health insurance.  At all times relevant hereto, Defendant, Independence Blue Cross, insured Plaintiff for expenses and costs related to her healthcare.   A true and correct copy of the "Commercial Medical Policy" for "Treatment of Gender Dysphoria" is attached hereto as Exhibit "B."

28.    At all times relevant hereto, Plaintiff paid the required percentage of health insurance premium costs out of her pay from the Defendant, Drexel University.

29.    At all times relevant hereto, Plaintiff complied with all terms and conditions of the

subject Policy.

30. Ms. Doe submitted a preclearance or preauthorization request to the Defendants seeking the Defendants' approval for the coverage for a series of surgical facial procedures known as "Facial Feminization Surgery," or "Facial Feminization Surgeries," abbreviated "FFS," which included specifically for Ms. Doe a repair of brow; browlift; lip lift; rhinoplasty; septoplasty; major septal repair; type 3 with anterior sinus wall osteotomy and reconstruction; primary nasoseptal reconstruction; tracheal shave; genioplasty (chin augmentation); rhytidectomy (forehead reduction and reconstruction); forehead contouring; scalp advancement; bone grafts; mandible bone excision; feminizing mandible; superior orbital rim contouring; closure of bilateral temporal recessions; segmental chin osteotomy and reconstruction; jaw contouring with ostectomy; tissue transfers and arrangements; and bilateral malar augmentation using prosthetic material.

31. Plaintiff sought coverage for the above services from the Defendants in an attempt to alleviate Ms. Doe's gender dysphoria.

32. At all times relevant hereto, Plaintiff submitted recommendations from a surgeon, primary care physician, licensed social worker, TransFamily Support Services, and the Transgender Legal Defense & Education Fund ("TLDEF"), each of whom recommended FFS surgeries for Ms. Doe as medically necessary and recommended Ms. Doe undergo these surgeries to alleviate her gender dysphoria.

33. Ms. Doe may need further FFS procedures, hair transplant procedures, and/or related procedures other than those identified above in the future.

34. Defendant, Drexel University, discriminated against Ms. Doe by refusing to extend

insurance coverage to Ms. Doe for facial feminization surgeries ("FFS") and related

procedures as part of Drexel University's self-funded employer-sponsored health plan,

administered and underwritten by Defendants, Independence Blue Cross and "QCC

Insurance Company."

35.    Defendants, Drexel University, Independence Blue Cross, and QCC Insurance

Company, discriminated against Ms. Doe on the basis of Ms. Doe's gender identity, on

the basis of Ms. Doe's gender, based on gender stereotyping, and on the basis of Ms.

Doe's disability, by wrongfully denying health insurance coverage to Ms. Doe in

refusing to cover FFS and related procedures for Ms. Doe in violation of its own policies

and in violation of Federal, state and local law.

36.    By collecting premium amounts from Ms. Doe's pay with Drexel University and

committing benefits discrimination by refusing to pay her legitimate claim, the

Defendants have made a large profit at Ms. Doe's expense.

37.    Defendants rejected coverage for the requested procedures calling them cosmetic and not

medically necessary when FFS procedures are, in fact, medically necessary and not

cosmetic for individuals like Plaintiff who have been diagnosed with gender dysphoria.

38.    On November 4, 2022, Defendant wrongfully denied coverage and provision of benefits

to Plaintiff for FFS procedures based on the Defendant's determination that Plaintiff

"does not objectively demonstrate facial features outside of the normal variation of an

average adult female."

39.    In addition to the Plaintiff herein, Defendants IBX and QCC have denied coverage to

another transgender woman for facial feminization surgeries and hair transplant

procedures, since June 2021, and continuing to this date, on the basis that the Plaintiff in

that other case "did not demonstrate a facial appearance outside the broad range of normal for the female gender," constituting impermissible sex-based stereotyping and disability-based discrimination.  *See Doe v. Independence Blue Cross, et al.*, Docket No. 23-1530 (E.D. Pa. 2023) (Savage, J.).

40.    Defendant IBX denied that such a statement was made in that case, but this is untrue, and the Plaintiff in the instant action independently corroborates that an almost *verbatim* denial was provided to her by IBX and QCC as well.

41.    In the face of the above-referenced litigation, *Doe v. Independence Blue Cross, et al.*, Docket No. 23-1530 (E.D. Pa. 2023) (Savage, J.), Defendants IBX and QCC have not changed their discriminatory policies, have illegally denied coverage to the Plaintiff herein, and it is believed and therefore averred Defendants IBX and QCC continue to impermissibly deny coverage to other transgender and gender non-conforming individuals with gender dysphoria.

42.    On January 6, 2023, Defendants denied a second-level appeal submitted by the Plaintiff and upheld their discriminatory decision to deny coverage to Plaintiff for FFS and related procedures.

43.    On February 3, 2023, following the Plaintiff's request for a review of that decision, Defendants once again upheld the discriminatory decision to deny coverage to Plaintiff for FFS and related procedures.

44.    Plaintiff contacted her employer, Drexel University, complaining about discrimination and the denials of coverage she received related to the medical benefits she was provided by Drexel University.

45.    Drexel University had actual notice or knowledge of Plaintiff's complaints of

discrimination.

46.   Plaintiff first contacted Drexel University's Chief Diversity Officer and Chief Human

Resource Officer on or about March 27, 2023.

47.   It is believed and therefore averred that Defendant, Drexel University's, policies relating

to education and employment prohibit discrimination based on gender, and provide that a

complainant should make a complaint with the Chief Diversity Officer and Chief Human

Resource Officer, which should have resulted in an investigation specifically into

allegations of sex discrimination, a hearing, a decision under the preponderance of the

evidence standard, and a right to appeal that decision, and such policies, it is believed

and therefore averred, do not state that a complainant should make a complaint with the

Executive Director of Total Rewards (Benefits and Compensation) about sex

discrimination.

48.   Defendant, Drexel University, did not properly process the Plaintiff's complaint as a

complaint of sex discrimination under Title IX or Title VII even though its non-

discrimination statement applies to employment and education settings alike.

49.   The department responsible for equal employment opportunity and ultimately for

enforcement of Title IX and Title VII at Drexel University did not properly address

Plaintiff's complaint of discrimination as a complaint of sex discrimination.

50.   Defendant, Drexel University, failed to provide appropriate action to correct and remedy

discrimination of which Defendant, Drexel University, had actual knowledge.

51.   Defendant, Drexel University, was deliberately indifferent to discrimination that the

Defendant, Drexel University, had actual knowledge was occurring.

52.   Defendant, Drexel University's, Chief Diversity Officer and Chief Human Resource

Officer referred Plaintiff to the Executive Director of Total Rewards (Benefits and Compensation) at Drexel University.

53.    Plaintiff shared her concerns/complaint of discrimination based on gender identity on March 29, 2023, with the Executive Director of Total Rewards (Benefits and Compensation) at Drexel University as directed by Drexel's Chief Diversity Officer and Chief Human Resource Officer.

54.    The Executive Director of Total Rewards (Benefits and Compensation) scheduled a subsequent meeting with Plaintiff on April 12, 2023 and at that time informed Plaintiff that a decision had not yet been made about expanding coverage.

55.    To add insult to injury, Plaintiff was frequently misgendered, or referred to by Defendants, IBX and QCC's, claims agents and representatives, by pronouns that were not the Plaintiff's preferred pronouns, and the name that was not Plaintiff's preferred name, during the claims process.

56.    Plaintiff was frequently referred to by Defendants, IBX and QCC, by the name that was not Plaintiff's preferred name, in the written denials and other written correspondence mailed to Plaintiff, improperly denying Plaintiff coverage for gender-affirming treatments.

57.    In the written denials and other correspondence mailed to Plaintiff by Defendants, IBX and QCC, Defendants variously used only the name that was not the Plaintiff's preferred name, and at other times Defendants used the name that was not the Plaintiff's preferred name, followed by a slash, and then the name that was Plaintiff's preferred name, to refer to Plaintiff.

58.    In another written denial mailed to Plaintiff by Defendants, IBX and QCC, dated

February 3, 2023, Plaintiff's preferred female name was used, followed by the letters "f/k/a," then the name that was not the Plaintiff's preferred name, in parenthesis.  It is unclear if "f/k/a" means "formerly," as in, "formerly known as," which would be an acknowledgment that Defendants, IBX and QCC, knew Plaintiff no longer identified her gender identity as male, but the Defendants continued to use the name that was not the Plaintiff's preferred name, or whether "f/k/a" means "frequently"—"frequently known as"—as if the Plaintiff used an alias, although the Plaintiff does not regard herself as having an alias.  Plaintiff identifies as a transgender woman and identifies by a preferred name which is consistent with Plaintiff's gender identity.  "F/k/a"—regardless of whether the abbreviation stands for "frequently known as" or "formerly known as"—is not an appropriate way to refer to a person who is transgender.

59.    In the February 3, 2023 correspondence to Plaintiff from Defendants, IBX and QCC, Defendants included Plaintiff's preferred name on the cc line of correspondence, with "f/k/a," followed by the name that was not Plaintiff's preferred name, when sending information about Plaintiff's appeal of the Defendants' denial of coverage.

60.    On November 4, 2022, Defendants, IBX and QCC, used the name that was not Plaintiff's preferred name to refer to Plaintiff on the cc line of the Defendants' Initial Denial of coverage to Plaintiff.

61.    There are additional sections of the written correspondence mailed to Plaintiff by Defendants, IBX and QCC, which include a name to refer to Plaintiff that is not the Plaintiff's preferred name.

62.    As a direct result of Defendants' unlawful and intentional discriminatory acts toward Ms. Doe, based on her gender identity, Ms. Doe has sustained economic and non-

economic harms and damages.

63.     Defendants caused Plaintiff to suffer economic hardship as she is unable to afford

medically-necessary treatments.

64.     Plaintiff was denied medically-necessary treatments for her gender dysphoria due to

illegal discrimination.

65.     Plaintiff's depression, anxiety, and gender-dysphoria disability were exacerbated by

Defendants' discriminatory acts.

66.     Plaintiff recollects that she considered committing suicide.

67.     The Supreme Court of the United States' decision in *Bostock v. Clayton County,*

*Georgia*, Consolidated Case No. 17-1618, 590 U.S. _____, 140 S. Ct. 1731, 2020 WL

3146686 (U.S. June 15, 2020), further supports Plaintiff's position in this matter that

Defendants have impermissibly discriminated against Plaintiff based on gender

stereotyping in violation of Federal, state, and city law.  See Bostock v. Clayton

County, Georgia, Case No. 17-1618, 590 U.S. ____, 140 S. Ct. 1731, 2020 WL

3146686 (U.S. June 15, 2020), and the related consolidated case, R.G. & G.R. Harris

Funeral Homes, Inc. v. EEOC, which supports the additional proposition that an

employee has the right to undergo a gender transition during their employment free

from unlawful discrimination by their employer.

68.     Defendants' objection to covering these services is further evidence of their arbitrary

and capricious discrimination as it is believed such a requirement is not needed in

other similar types of surgeries for non-trans people and that no other insurance

company has such a requirement.

69.     Plastic surgery procedures for comparators, individuals who have suffered

disfigurement from a car accident, or breast augmentation for patients diagnosed with cancer, are not considered cosmetic and are considered covered services.  Plaintiff is therefore similarly situated but was discriminated against on account of her gender identity.  Excluding FFS and related procedures as covered services constitutes discrimination based on sex, gender identity, gender stereotyping, and disability (gender dysphoria).

70.     By way of several further examples of comparator evidence, an individual with a "disorder of sexual development," who is intersex, or who has suffered disfigurement, would be covered under Defendants' interpretation, but an individual who is transgender with gender dysphoria ("GD") would never be covered under Defendants' interpretation of its policy constituting discrimination.

71.     By way of another example, a person who was assigned male at birth, but who had the unfortunate luck to have had, for example, their male genitals removed at birth or early in their life, and they felt they were required to learn to live their life in conformity with all of society's consequent stereotypes and expectations for a person without male genitals—*i.e.*, a person assigned the sex of male at birth but who adopted the female gender—that person would be covered under Defendants' policy.  However, a person who is transgender, with gender dysphoria ("GD"), would never be covered under Defendants' policy.

72.     In this example, or in the example of disfigurement (for example, a car accident), in other words, where a person is stuck with a body through no fault of their own that does not conform to society's expectation for their gender, in such a situation FFS procedures would be covered under Defendants' policy, but an individual who was

stuck in a body at birth that through no fault of their own did not match their internal sense of their gender, and which caused the person to suffer from gender dysphoria ("GD"), would never be covered under Defendants' policy constituting discrimination confirmation surgery ("GCS"), which constitutes impermissible gender-identity based and gender-based discrimination.

73.    Additionally, Defendants' rejection of coverage on the basis that Plaintiff has demonstrated a *mental* impairment, as opposed to a *physical* impairment, constitutes impermissible discrimination, or disparate treatment, based on disability and based on sex.  Plaintiff contends she has a physical impairment.  However, assuming *arguendo* that Plaintiff does not have a physical impairment, Plaintiff's gender dysphoria constitutes a mental impairment, and covering similarly situated transgender or non-transgender individuals with a *physical* impairment, but not a *mental* impairment, for such surgeries, constitutes discrimination based on sex and disability.

74.    Defendants denied coverage to Plaintiff for FFS surgeries without requesting or relying on any photographs being submitted to Defendants.

75.    Defendants' denials of coverage to Plaintiff for gender-affirming treatments lack medical support, are undercut by Defendants' own medical research and/or medical references, are arbitrary, capricious, discriminatory, and violate Defendants' own policies as well as City, State, and Federal law.

76.    FFS is by definition reconstructive surgery and a medical necessity for transgender women with gender dysphoria ("GD") such as Ms. Doe.

77.    FFS is a medically-recognized standard-of-care medical treatment for a transgender person suffering from gender dysphoria ("GD").

78.   The surgery is medically necessary and not cosmetic.  An authoritative reference,

ignored by Defendants, notes that FFS is <u>not</u> cosmetic:

[D]emarcation between 'necessity' and 'cosmetic' in transgender healthcare based on specific body parts *is in direct opposition* to the scientific community's understanding of gender dysphoria and professional guidelines for transgender health.

              *            *           *

*While cosmetic surgery is intended to produce beauty, FFS is undertaken to produce femaleness.*  Like GRS, FFS is intended to transform the patient's gender from male to female.  FFS is not driven by a desire to achieve cosmetic improvement; it is driven by a desire to obtain a body that enables one to engage and function in society.

There are many examples of when evidence regarding the impact of a given procedure on quality of life has led to changes in insurance coverage and reclassification of a procedure from 'cosmetic' to 'necessary.'  Breast augmentation is considered a cosmetic procedure and not covered by insurance but reconstructive breast surgery for cancer patients that have undergone mastectomies is considered medically necessary and therefore a covered service.  Similarly, we no longer consider facial surgery for victims of extensive burns to be 'cosmetic'.  So too should FFS no longer be considered 'cosmetic' but medically necessary.

Dubov, Alex, Ph.D. and Fraenkel, Liana, M.D., M.P.H., *Facial Feminization Surgery: The Ethics of Gatekeeping in Transgender Health,* Am J Bioeth. 2018 Dec.; 18(12): 3–9 (emphasis added).

79.   The Defendants, IBX and QCC, did not abide by their own policies of non-

discrimination in the Plaintiff's case, and do not abide by their own policies of non-

discrimination with respect to transgender people who have gender dysphoria,

therefore the Defendants are discriminating against the Plaintiff and other transgender

people.  Defendants, IBX and QCC's, policies provide:

The Member has the right to receive health care services without discrimination based on race, ethnicity, age, mental or physical disability, genetic information, color, religion, gender, national origin, source of payment, sexual orientation, or sex, including stereotypes and gender identity, for Medically Necessary health services made available on the same terms for all individuals, regardless of sex assigned at birth, gender identity, or recorded gender; Based on an individual's sex assigned at birth, gender identity, or recorded gender, if it is different from the one to which such health service is ordinarily available; Related to gender transition if such denial or limitation results in discriminating against a transgender individual.

80.    Defendants' decision was taken in conscious or reckless disregard of Plaintiff's

Federally-protected rights.

81.    Defendants' decision to deny coverage to Ms. Doe for FFS surgeries constitutes illegal

discrimination against her on account of her being transgender, based on her gender

dysphoria, and/or on the basis of impermissible gender stereotypes.

## CLAIMS FOR RELIEF

### COUNT I:
### DISCRIMINATION BASED ON SEX IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 ("TITLE VII"), 42 U.S.C. § 2000*e*, et seq.
### (PLAINTIFF, JANE DOE v. DEFENDANTS, DREXEL UNIVERSITY, INDEPENDENCE BLUE CROSS, AND OCC INSURANCE COMPANY)

82.    Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

83.    The acts and omissions described above discriminate on the basis of sex in violation of

Title VII of the Civil Rights Act of 1964 ("Title VII").

84.    Defendants subjected Ms. Doe to unequal terms, conditions, benefits, and privileges of

her employment, and otherwise made decisions that had an adverse effect on her

employment, by denying or excluding coverage for facial feminization surgeries and

related procedures as covered services when medically necessary as gender-affirming

care and treatment, from Defendant, Drexel University's, self-funded employer-

sponsored health plan ("the Plan").

85.    Defendant Drexel funded the Plan.

86.    Additionally, "employer" as it is defined and used in Title VII is sufficiently broad to

encompass any party who significantly affects access of any individual to employment

opportunities, compensation, terms, conditions, privileges, or benefits, of which health

insurance benefits are included.

87.   It is believed and therefore averred that Defendants Drexel, IBX, and QCC, exercised extensive control over benefits, which is an important aspect of the employment relationship.

88.   Defendants exercised control over the coverage of FFS procedures, and did not permit coverage of FFS procedures based on gender stereotyping, discrimination based on sex, and/or discrimination based on gender identity.

89.   Defendants discriminated against Ms. Doe on the basis of Ms. Doe's gender identity, on the basis of Ms. Doe's gender, and based on gender stereotyping, by wrongfully denying health insurance coverage to Ms. Doe for FFS and related procedures.

90.   Defendants rejected coverage for the requested procedures calling them cosmetic and not medically necessary when FFS procedures are, in fact, medically necessary and not cosmetic for individuals like Plaintiff who have been diagnosed with gender dysphoria.

91.   Defendants wrongfully denied coverage and provision of benefits to Plaintiff for FFS procedures based on the Defendants' determination that Plaintiff "does not objectively demonstrate facial features outside of the normal variation of an average adult female."

92.   Plaintiff was frequently misgendered, and the name that was not Plaintiff's preferred name was used to refer to Plaintiff, throughout the claims process.

93.   Defendants' discriminatory acts described herein result in adverse treatment of the Defendant's, Drexel University's, employees based on sex, gender identity, and gender stereotyping, in violation of Title VII.

94.   Defendants engaged in the foregoing discriminatory acts and/or omissions with malice or with reckless indifference to Doe's protected rights under Title VII and therefore punitive damages are warranted against the Defendants.

95.     Plaintiff was directly and proximately caused by Defendants to suffer economic harms,

emotional distress, mental anguish, pain and suffering, humiliation and embarrassment,

loss of enjoyment of life and life's pleasures, and other damages, as described more

fully herein, on account of the Defendants' discriminatory actions, and for which

Plaintiff seeks economic damages, compensatory damages, punitive damages, and other

damages described more fully below, and which are incorporated herein by reference as

if the same were set forth more fully at length herein.

**COUNT II:**
**DISCRIMINATION BASED ON SEX IN VIOLATION OF TITLE IX OF THE**
**EDUCATION AMENDMENTS OF 1972 ("TITLE IX"), 20 U.S.C. § 1681, et seq.**
**(PLAINTIFF, JANE DOE v. DEFENDANT, DREXEL UNIVERSITY)**

96.     Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

97.     The Third Circuit has held that Title IX is a remedy for employment discrimination in

addition to Title VII.  See Doe v. Mercy Catholic Med. Ctr., 850 F.3d 545, 557 (3d Cir.

2017); see also "Overview of Title IX:  Interplay with Title VI, Section 504, Title VII, and

the Fourteenth Amendment," Title IX Legal Manual, United States Department of Justice,

available at [https://www.justice.gov/crt/title-ix#77] [Last Accessed Sept. 11, 2023]

("Unlike Title VI which covers employment in only limited circumstances, Title IX clearly

covers employment discrimination").

98.     The "substantive standards and policies developed under Title VII to define

discriminatory employment conduct apply with equal force to employment actions

brought under Title IX" and when "a plaintiff complains of discrimination with regard to

conditions of employment in an institution of higher learning, the method of evaluating

Title IX gender discrimination claims is the same as those in a Title VII case."

"Overview of Title IX:  Interplay with Title VI, Section 504, Title VII, and the Fourteenth

Amendment," Title IX Legal Manual, United States Department of Justice, available at [https://www.justice.gov/crt/title-ix#77] [Last Accessed Sept. 11, 2023].

99.     In the Third Circuit, "whether a covered program or activity receives Federal financial assistance, 20 U.S.C. § 1681(a), is determined by reference to the entire entity or whole organization."  20 U.S.C. § 1687 (internal quotations omitted).  Doe v. Mercy Catholic Med. Ctr., 850 F.3d 545, 557 (3d Cir. 2017).

100.    At all times relevant hereto, Defendant, Drexel University, is a university that received Federal financial assistance for its education programs and activities and is covered under Title IX.

101.    At all times relevant hereto, Defendant, Drexel University, received Federal financial assistance for the purpose of providing employment for its education programs and activities.

102.    At all times relevant hereto, Defendant, Drexel University, discriminated against Plaintiff with respect to a "covered program or activity" subject to Title IX.  20 U.S.C. § 1681(a).

103.    Defendant, Drexel University, discriminated against Ms. Doe on the basis of Ms. Doe's gender identity, on the basis of Ms. Doe's gender, and based on gender stereotyping, by wrongfully denying health insurance coverage to Ms. Doe for FFS and related procedures.

104.    Defendant wrongfully denied coverage and provision of benefits to Plaintiff for FFS procedures based on the Defendant's determination that Plaintiff "does not objectively demonstrate facial features outside of the normal variation of an average adult female," which constitutes gender stereotyping and sex discrimination.

105.    Plaintiff was frequently misgendered, and the name that was not Plaintiff's preferred

name was used to refer to Plaintiff, throughout the claims process.

106.   Defendant, Drexel University, failed to provide appropriate action to correct and remedy
       discrimination of which Defendant, Drexel University, had actual knowledge.

107.   Defendant, Drexel University, was deliberately indifferent to discrimination that the
       Defendant, Drexel University, had actual knowledge was occurring.

108.   Defendants did not properly process the Plaintiff's complaint as a complaint of
       discrimination based on sex under Title IX even though, it is believed and therefore
       averred, that its Title IX non-discrimination statement applies to employment and
       education settings alike.

109.   Defendants failed to provide appropriate action to correct and remedy discrimination of
       which the Defendants had actual knowledge.

110.   Defendants were deliberately indifferent to discrimination that the Defendants had actual
       knowledge was occurring.

111.   Plaintiff was directly and proximately caused by Defendants to suffer economic harms,
       emotional distress, mental anguish, pain and suffering, humiliation and embarrassment,
       loss of enjoyment of life and life's pleasures, and other damages, as described more
       fully herein, on account of the Defendants' discriminatory actions, and for which
       Plaintiff seeks economic damages, compensatory damages, and other damages
       described more fully below, and which are incorporated herein by reference as if the
       same were set forth more fully at length herein.

**COUNT III:**
**DISCRIMINATION BASED ON GENDER IDENTITY IN VIOLATION OF THE**
**PHILADELPHIA FAIR PRACTICES ORDINANCE ("PFPO"), CHAPTER 9-1100,**
**SECTION 9-1101, _et seq.,_ OF THE PHILADELPHIA CODE**
**(PLAINTIFF, JANE DOE v. DEFENDANTS, DREXEL UNIVERSITY,**
**INDEPENDENCE BLUE CROSS, AND OCC INSURANCE COMPANY)**

112.    Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

113.    Defendants discriminated against Ms. Doe in violation of the PFPO, at Section 9-1101, <u>et</u>

<u>seq.</u>, of the Philadelphia Code.

114.    The Defendants constitute an "employer" within the meaning of the PFPO at § 9-1102(h).

115.    Defendants engaged in "discrimination" as defined by the PFPO which prohibits

discrimination that includes "[a]ny direct or indirect practice of exclusion . . . refusal," or

"denial," "on the basis of actual or perceived . . . sex," or "gender identity."  § 9-1102(e).

116.    The PFPO explicitly protects Plaintiff from discrimination on the basis of her "gender

identity," § 9-1102(e), therefore prohibits the discriminatory conduct complained of

herein.

117.    The PFPO prohibits discrimination on the basis of sex, gender, gender identity, gender

transition, and gender stereotyping.

118.    Defendants discriminated against Ms. Doe on the basis of Ms. Doe's gender identity, on

the basis of Ms. Doe's gender, and based on gender stereotyping, by wrongfully denying

health insurance coverage to Ms. Doe for FFS and related procedures.

119.    Defendants engaged in the foregoing discriminatory acts and/or omissions with malice or

with reckless indifference to Doe's protected rights and therefore punitive damages are

warranted against the Defendants.

120.    Plaintiff was directly and proximately caused by Defendants to suffer economic harms,

emotional distress, mental anguish, pain and suffering, humiliation and embarrassment,

loss of enjoyment of life and life's pleasures, and other damages, as described more

fully herein, on account of the Defendants' discriminatory actions, and for which

Plaintiff seeks economic damages, compensatory damages, punitive damages, and other

damages described more fully below, and which are incorporated herein by reference as

if the same were set forth more fully at length herein.

**COUNT IV:**
**DISCRIMINATION BASED ON SEX IN VIOLATION OF SECTION 1557 OF THE**
**AFFORDABLE CARE ACT, 42 U.S.C. § 18116**
**(PLAINTIFF, JANE DOE v. DEFENDANTS, DREXEL UNIVERSITY,**
**INDEPENDENCE BLUE CROSS, AND QCC INSURANCE COMPANY)**

121.    Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

122.    Congress prohibited sex discrimination in any health care program and activity, including

policies of insurance issued on behalf of health insurance companies, that includes the

Defendants, IBX and QCC, at 42 U.S.C. § 18116, also known as Section 1557, the Patient

Protection and Affordable Care Act, or Affordable Care Act.

123.    It is believed and therefore averred that Defendant, Drexel University, received Federal

financial assistance, including, it is believed, for its health programs or activities, and is

therefore a covered entity under Section 1557 of the Affordable Care Act.

124.    It is believed and therefore averred that Defendant, Drexel University, is a health insurance

issuer, with respect to its self-funded employer-sponsored health plan, and is therefore a

covered entity within the meaning of Section 1557 of the Affordable Care Act.

125.    42 U.S.C. § 18116 covers the Defendants as Section 18116  provides, in pertinent part, as

follows:

§ 18116. Nondiscrimination.

(a)  In general.

Except as otherwise provided for in this title (or an amendment made by this title),
an individual shall not, on the ground prohibited under title VI of the Civil Rights
Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of
1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C.
6101 et seq.), or section 794 of title 29, be excluded from participation in, be denied
the benefits of, or be subjected to discrimination under, any health program or

activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments).

42 U.S.C. § 18116(a).

126.    Section 1557 of the Affordable Care Act, along with its implementing regulations, at 45 CFR § 92, et seq., 81 FR 31375-473 (May 18, 2016), have adopted the ACA non-discrimination rule, which prohibits discrimination based on sex, gender identity, and gender expression, by referring to and incorporating therein the prohibitions of Title IX (20 U.S.C. § 1681) against sex discrimination including its enforcement provisions.

127.    According to 45 CFR § 92.1, "Section 1557 requires the application of the enforcement mechanisms under Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for purposes of violations of Section 1557 and this part."   45 CFR § 92.1 (Subpart A – General Provisions).

128.    45 CFR § 92.2 further provides in pertinent part:

> Except as provided in Title I of the Patient Protection and Affordable Care Act (or any amendment thereto), an individual shall not, on any of the grounds set forth in paragraph (b) of this section, be excluded from participation, be denied the benefits of, or be subjected to discrimination under any health program or activity, any part of which is receiving Federal financial assistance (including credits, subsidies, or contracts of insurance) provided by the U.S. Department of Health and Human Services; or under any program or activity administered by the Department under such Title; or under any program or activity administered by any entity established under such Title.

45 CFR § 92.2.

129.    Defendants IBX and QCC were required to certify compliance with the prohibitions against sex discrimination in 42 U.S.C. § 18116 in order to participate in the

23

Commonwealth of Pennsylvania's State Health Insurance Exchange, under 45

C.F.R. § 92.4:

> Assurances.
>
> (a) Assurances.  An entity applying for Federal financial assistance to which this part applies shall, as a condition of any application for Federal financial assistance, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the entity's health programs or activities will be operated in compliance with section 1557 and this part.  A health insurance issuer seeking certification to participate in an Exchange or a State seeking approval to operate a State Exchange to which section 1557 or this part applies shall, as a condition of certification or approval, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the health program or activity will be operated in compliance with section 1557 and this part.  An applicant or entity may incorporate this assurance by reference in subsequent applications to the Department for Federal financial assistance or requests for certification to participate in an Exchange or approval to operate a State Exchange.

45 C.F.R. § 92.4.

130. Section 1557 provides that "an individual shall not, on the ground prohibited under …Title IX of the Education Amendments of 1972 (20 U.S.C. 1681, et seq.)" – which prohibits discrimination "on the basis of sex" – "be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance."   42 U.S.C. § 18116(a).

131. The Department of Health and Human Services' ("HHS") regulations including the ACA non-discrimination rule apply to "covered entities" and prohibit discrimination on the basis of gender identity.  45 C.F.R. §§ 92.4, 92.207.

132. Defendants, Drexel, IBX, and QCC, constitute an issuer of insurance products, plans, and benefits that receive Federal financial assistance for those products, plans, and benefits.

133. Each of the Defendants constitute a "covered entity" under 45 C.F.R. § 92.4.3.

24

134.   Discrimination on the basis of gender identity, transgender status, gender transition, or gender nonconformity constitutes discrimination on the basis of "sex" under Section 1557.

135.   Ms. Doe has been wrongfully subjected to discrimination by Defendants because of her sex.

136.   In addition to wrongfully denying Plaintiff insurance coverage on account of her gender identity, on account of gender stereotypes, and/or on account of sex, Defendant IBX and QCC's claims agents, claims representatives, employees, and/or other agents frequently misgendered Ms. Doe, and used the name that was not Ms. Doe's preferred name to refer to her.

137.   Plaintiff was directly and proximately caused by Defendants to suffer economic harms and other damages, as described more fully herein on account of the Defendants' discriminatory actions, and for which Plaintiff seeks economic and other damages.

**COUNT V:**
**DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF SECTION 1557 OF**
**THE AFFORDABLE CARE ACT, 42 U.S.C. § 18116**
**(PLAINTIFF, JANE DOE v. DEFENDANTS, DREXEL UNIVERSITY,**
**INDEPENDENCE BLUE CROSS, AND QCC INSURANCE COMPANY)**

138.   Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

139.   Ms. Doe has a disability, gender dysphoria, or "GD," covered within the meaning of Section 1557 of the Affordable Care Act.

140.   Congress prohibited discrimination in any health care program and activity, including policies of insurance issued on behalf of health insurance companies, on the basis of disability, that includes the Defendants, at 42 U.S.C. § 18116, also known as Section 1557, the Affordable Care Act.

141.  42 U.S.C. § 18116 provides, in pertinent part, as follows;

§ 18116. Nondiscrimination.

(a)  In general.

Except as otherwise provided for in this title (or an amendment made by this title), an individual shall not, on the ground prohibited under title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), ***or section 794 of title 29 [the Rehabilitation Act]***, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any health program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or any entity established under this title (or amendments).

42 U.S.C. § 18116(a) (emphasis added).

142.  According to 45 CFR § 92.1, "Section 1557 requires the application of the enforcement mechanisms under Title VI of the Civil Rights Act of 1964 (42 U.S.C. 2000d et seq.), Title IX of the Education Amendments of 1972 (20 U.S.C. 1681 et seq.), the Age Discrimination Act of 1975 (42 U.S.C. 6101 et seq.), and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. 794) for purposes of violations of Section 1557 and this part."   45 CFR § 92.1 (Subpart A – General Provisions).

143.  Defendants IBX and QCC were required to certify compliance with the prohibitions against discrimination based on disability as set forth in 42 U.S.C. § 18116 in order to participate in the Commonwealth of Pennsylvania's State Health Insurance Exchange, under 45 C.F.R. § 92.4:

Assurances.

(a)  Assurances.  An entity applying for Federal financial assistance to which this part applies shall, as a condition of any application for Federal financial assistance, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the entity's health programs or activities will be operated in compliance with section 1557 and this part.  A

health insurance issuer seeking certification to participate in an Exchange or a State seeking approval to operate a State Exchange to which section 1557 or this part applies shall, as a condition of certification or approval, submit an assurance, on a form specified by the Director of the Department's Office for Civil Rights, that the health program or activity will be operated in compliance with section 1557 and this part.  An applicant or entity may incorporate this assurance by reference in subsequent applications to the Department for Federal financial assistance or requests for certification to participate in an Exchange or approval to operate a State Exchange.

45 C.F.R. § 92.4

144.  The Department of Health and Human Services ("HHS") regulations including the ACA non-discrimination rule apply to "covered entities" and prohibit discrimination on the basis of actual or perceived disability.   45 C.F.R. §§ 92.4, 92.207.

145.  Defendants each constitute a "covered entity" under 45 C.F.R. § 92.4.3.

146.  Ms. Doe has been wrongfully been subjected to discrimination by Defendants because of her disability (gender dysphoria).

147.  Defendants rejected coverage for the requested procedures on the additional basis that Plaintiff was required to demonstrate a physical or functional component to obtain coverage for FFS under Defendants' policy.   However, Plaintiff had a physical impairment.   Therefore, Defendants' denial is improper, arbitrary, capricious, and discriminatory.

148.  Defendants rejected coverage for the requested procedures on the improper basis that Plaintiff had demonstrated a *mental* impairment, and had not demonstrated a *physical* impairment, which is factually incorrect as Plaintiff had demonstrated a physical, functional, congenital, and/or biological component to her condition.

149.  Defendants rejected coverage stating that Plaintiff was required to demonstrate a physical or functional component (such as, for example, disfigurement) to obtain coverage for FFS under Defendants' policy.   However, Plaintiff *has* demonstrated a

physical or functional impairment (gender dysphoria), and Defendants' denial is improper, arbitrary, capricious, and discriminatory.

150.    Plaintiff was frequently misgendered, and the name that was not Plaintiff's preferred name was used to refer to Plaintiff, throughout the claims process.

151.    Plaintiff was directly and proximately caused by Defendants to suffer economic harms and other damages, as described more fully herein on account of the Defendants' discriminatory actions, and for which Plaintiff seeks economic and other damages.

**COUNT VI:**
**DISCRIMINATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES**
**ACT ("ADA"), AS AMENDED, 42 U.S.C. § 12101, *et seq.***
**(PLAINTIFF, JANE DOE v. DEFENDANTS, DREXEL UNIVERSITY,**
**INDEPENDENCE BLUE CROSS, AND QCC INSURANCE COMPANY)**

152.    Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

153.    Defendants discriminated against Ms. Doe based on her disability—gender dysphoria ("GD")—in violation of Title I of the ADA, 42 U.S.C. § 12112(a), et seq.—which prohibits employment discrimination including the unequal and discriminatory provision of benefits based on disability.

154.    Defendants constitute covered entities pursuant to 42 U.S.C. § 12111(2).

155.    Plaintiff was an employee of Defendant, Drexel University, pursuant to 42 U.S.C. § 12111(4).

156.    Plaintiff received health insurance coverage through Drexel's employer-sponsored healthcare plan provided, administered, and underwritten by Defendants, Independence Blue Cross and QCC Insurance Company.  Defendants are covered under Title I of the ADA, 42 U.S.C. § 12112(a), et seq.

157.    Alternatively, Drexel delegated an important aspect of the employment relationship to a

third party, Defendant, Independence Blue Cross, or Defendant, QCC Insurance

Company, which discriminated against the Plaintiff based on disability in violation of

Title I of the ADA.

158.    It is believed and therefore averred that Defendants had control over the coverage of FFS

procedures and did not permit coverage of FFS procedures based on anti-transgender

discrimination.

159.    Doe is a qualified individual under the ADA who "with or without reasonable

accommodation, can perform the essential functions of the employment position that he

or she holds."  42 U.S.C. § 12111(8).

160.    Ms. Doe has a disability, gender dysphoria, or GD, within the meaning of the ADA.

Doe's gender dysphoria constitutes a disability under the ADA because it is a physical

or mental impairment that substantially limits one or more major life activities.  42

U.S.C. § 12102(1).

161.    The substantial limitation on Doe's interaction with others is characterized on a regular

basis by severe problems, primarily social withdrawal and Major Depressive Disorder

("MDD") associated with her gender dysphoria.

162.    Ms. Doe was clinically diagnosed with GD and has clinically significant distress

associated with being transgender.  Ms. Doe is substantially limited in the major life

activities of interacting with others, social functioning, caring for herself, concentrating,

thinking, and working.

163.    Defendants discriminated against Ms. Doe in her capacity as an employee of Defendant,

Drexel University, by denying coverage to Ms. Doe for FFS and related procedures,

stating that Plaintiff was required to demonstrate a physical or functional component to

obtain coverage for FFS under Defendants' policy.  However, Plaintiff had a physical

impairment.  Therefore, Defendants' denial is improper, arbitrary, capricious, and

discriminatory.

164.    Defendants rejected coverage for the requested procedures on the basis that Plaintiff has

demonstrated a *mental* impairment, and has not demonstrated a *physical* impairment,

which is factually incorrect as Plaintiff has demonstrated a physical, functional,

congenital, and/or biological component to her condition.

165.    Defendants' denial stated that Plaintiff was required to demonstrate a physical or

functional component (such as, for example, disfigurement) to obtain coverage for FFS

under Defendants' policy.  However, Plaintiff *has* demonstrated a physical or

functional impairment (gender dysphoria), and Defendants' denial is improper,

arbitrary, capricious, and discriminatory.

166.    Pled in the alternative, if necessary, the Defendants, IBX and QCC, constitute a public

accommodation or public accommodations within the meaning of the ADA/

167.    As a public accommodation or accommodations, IBX and QCC are prohibited from

discriminating against people with disabilities under Title III of the Americans with

Disabilities Act, 42 U.S.C. § 12182(A), which provides that, "No individual shall be

discriminated against on the basis of disability in the full and equal enjoyment of the

goods, services, facilities, privileges, advantages, or accommodations of any place of

public accommodation by any person who owns, leases (or leases to), or operates a

place of public accommodation."  42 U.S.C. § 12182(A).

168.    Plaintiff had multiple conversations with Defendant, IBX and QCC's, claims agents and

representatives at IBX and QCC's offices, and, it is believed and averred, at the IBX

headquarters in Philadelphia, and during those conversations, Plaintiff was misgendered, discriminated against, and denied coverage on account of her gender identity.

169.   Plaintiff received multiple written communications from Defendant IBX and QCC, including, it is believed and averred, communications mailed from a physical office location, which used a name that did not correspond with the Plaintiff's preferred name.

170.   Defendant IBX and QCC's physical files are believed and averred to use a name for Plaintiff that does not correspond with the Plaintiff's preferred name.

171.   Plaintiff was denied the full and equal enjoyment of benefits, privileges, advantages, and accommodations at Defendants IBX and QCC on account of her disability.

172.   Plaintiff attempted to deal directly with Defendant IBX and raised her issues and concerns with discrimination from Defendant IBX, occurring from Defendant IBX's claims agents and representatives, to no avail.  There is a sufficient nexus between Defendant IBX's offices, Defendant IBX's headquarters in Philadelphia, and Defendant IBX's claims agents and representatives, with the subject insurance policy and Defendant IBX's discriminatory denials which form the basis of this case.

173.   The denials violate the ADA by discriminating on the basis of disability in the denial of coverage for treatment meant to alleviate Ms. Doe's disability.

174.   Defendants acted with malice, reckless indifference, and/or deliberate indifference to Ms. Doe's rights under the ADA and therefore punitive damages are warranted.

175.   As a direct and proximate result of Defendants' aforesaid unlawful discriminatory practices Ms. Doe has sustained harm.

176.   Ms. Doe seeks redress for Defendants' violation of her rights under 42 U.S.C. §12133.

177.   Plaintiff was directly and proximately caused by Defendants to suffer economic harms,

emotional distress, mental anguish, pain and suffering, humiliation and embarrassment,

loss of enjoyment of life and life's pleasures, and other damages, as described more

fully herein, on account of the Defendants' discriminatory actions, and for which

Plaintiff seeks economic damages, compensatory damages, punitive damages, and other

damages described more fully below, and which are incorporated herein by reference as

if the same were set forth more fully at length herein.

**COUNT VII:**
**DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF THE**
**PHILADELPHIA FAIR PRACTICES ORDINANCE ("PFPO"), SECTION 9-1101,**
**<u>et seq.</u>, OF THE PHILADELPHIA CODE**
**(PLAINTIFF, JANE DOE v. DEFENDANTS, DREXEL UNIVERSITY,**
**<u>INDEPENDENCE BLUE CROSS, AND OCC INSURANCE COMPANY</u>)**

178.   Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

179.   Defendants discriminated against and failed to accommodate Ms. Doe's gender-dysphoria

disability in violation of the Philadelphia Fair Practices Ordinance ("PFPO"), at Chapter 9-

1100 of the Philadelphia Code.

180.   The Defendants constitute an "employer" within the meaning of the PFPO at § 9-1102(h).

181.   Defendants engaged in "discrimination" as defined by the PFPO which prohibits

discrimination that includes "[a]ny direct or indirect practice of exclusion . . . refusal," or

"denial," "on the basis of actual or perceived . . . disability." § 9-1102(e).

182.   The PFPO explicitly protects Plaintiff from discrimination on the basis of her "gender

identity," § 9-1102(e), therefore prohibits discrimination including based on Plaintiff's

gender-dysphoria disability.

183.   Defendants discriminated against Ms. Doe on the basis of Ms. Doe's gender-dysphoria

disability by wrongfully denying health insurance coverage to Ms. Doe for FFS and related

procedures.

184.    Defendants engaged in the foregoing discriminatory acts and/or omissions with malice or with reckless indifference to Doe's protected rights and therefore punitive damages are warranted against the Defendants.

185.    Plaintiff was directly and proximately caused by Defendants to suffer economic harms, emotional distress, mental anguish, pain and suffering, humiliation and embarrassment, loss of enjoyment of life and life's pleasures, and other damages, as described more fully herein, on account of the Defendants' discriminatory actions, and for which Plaintiff seeks economic damages, compensatory damages, punitive damages, and other damages described more fully below, and which are incorporated herein by reference as if the same were set forth more fully at length herein.

**COUNT VIII:**
**VIOLATION OF § 502(a)(1)(B) OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT ("ERISA"), 29 U.S.C. § 1132(a)(1)(B)**
**(PLAINTIFF, JANE DOE v. DEFENDANT, PERSONAL CHOICE HEALTH BENEFITS PLAN, A COMPREHENSIVE MAJOR MEDICAL GROUP CONTRACT, BY AND BETWEEN QCC INSURANCE COMPANY, A PENNSYLVANIA CORPORATION, AND DREXEL UNIVERSITY)**

186.    Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

187.    It is believed and therefore averred that the plan, "Personal Choice Health Benefits Plan, a Comprehensive Major Medical Group Contract, By and Between QCC Insurance Company, a Pennsylvania corporation, and Drexel University."
(hereinafter, the "Health Benefit Plan" or "the Plan") is an employee benefit plan covered by ERISA.

188.    It is believed and therefore averred that Plaintiff was, at all times relevant hereto, a participant of the Plan.

189.    Plaintiff was wrongfully denied insurance benefits for FFS surgeries and related

procedures owed by the Plan.

190.   Defendant, the Plan, incorrectly determined that Plaintiff could not demonstrate that the coverage sought was for procedures that were "medically necessary" as opposed to cosmetic.  Defendant, the Plan, incorrectly determined that Plaintiff sought cosmetic surgeries when Plaintiff did not.  At all times relevant hereto, Plaintiff sought coverage for surgeries that were medically necessary and not cosmetic.  Defendant, the Plan, incorrectly applied the terms of the Plan and improperly denied benefits to Plaintiff on this basis.

191.   It is believed and therefore averred that Defendant, the Plan, improperly denied the subject health insurance benefits sought by Plaintiff due to discrimination on account of Plaintiff's gender identity.

192.   Defendant, the Plan, clearly violated the plain terms of the Plan including the following provision:

> The Member has the right to receive health care services without discrimination based on race, ethnicity, age, mental or physical disability, genetic information, color, religion, gender, national origin, source of payment, sexual orientation, or sex, including stereotypes and gender identity, for Medically Necessary health services made available on the same terms for all individuals, regardless of sex assigned at birth, gender identity, or recorded gender; Based on an individual's sex assigned at birth, gender identity, or recorded gender, if it is different from the one to which such health service is ordinarily available; Related to gender transition if such denial or limitation results in discriminating against a transgender individual.

193.   However, Defendants deviated from and did not follow the terms of the Plan with respect to non-discrimination in the Plaintiff's case, discriminating against Plaintiff in violation of the terms of the Plan as well as in violation of Federal, state, and City law.

194.   Plaintiff seeks to recover from Defendant, the Plan, in this cause of action, as follows:

      a.   Declaratory and equitable/injunctive relief requiring the Plan to insure

Plaintiff and other transgender people with gender dysphoria for facial feminization surgeries and related procedures on an equal and non-discriminatory basis; to adopt and enforce a written policy, procedure, or guideline to this effect; and to immediately order a re-evaluation of Plaintiff's claim for the purposes of evaluating Plaintiff's claim on an equal and non-discriminatory basis;

b.   Declaratory and equitable/injunctive relief providing that Plaintiff is covered for all FFS and related procedures wrongfully denied, and providing that Plaintiff will be covered and all benefits paid moving forward;

c.   Repayment of premiums paid by Plaintiff out of Plaintiff's pay with Drexel University;

d.   Back benefits or the economic value of the payment of all benefits wrongfully denied by the Plan;

e.   Any out-of-pocket expenses which may include expenses related to travel, transportation, accommodations, and related expenses;

f.   Any other out-of-pocket expenses and/or economic damages incurred by Plaintiff the recovery of which would place the Plaintiff in the same position but for the discrimination against her;

g.   An award of reasonable attorneys' fees and costs;

h.   Pre- and post-judgment interest;

i.   Any other equitable relief.

195.   This claim or cause of action is asserted in the alternative if necessary.

**COUNT IX:**
**VIOLATION OF § 502(a)(3) OF ERISA, 29 U.S.C. § 1132(a)(3) (PLAINTIFF, JANE DOE v. DEFENDANTS, DREXEL UNIVERSITY, INDEPENDENCE BLUE CROSS, AND OCC INSURANCE COMPANY)**

196.    Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

197.    It is believed and therefore averred that the Health Benefit Plan is an employee benefit plan covered by ERISA.

198.    It is believed and therefore averred that Plaintiff was, at all times relevant hereto, a participant of the Plan.

199.    It is believed and therefore averred that Defendants, Drexel University, Independence Blue Cross, and QCC Insurance Company, at all relevant times, each constituted a "fiduciary," as an insurer owes a fiduciary duty to its insured, and must act at all times in good faith in representing the interests of its insured, rather than its own self-interests, in determining coverage under the Plan for treatments that are medically necessary.

200.    It is believed and therefore averred that Defendants, at all times relevant hereto, each constituted a party who deals with an ERISA plan, and had a role in assisting the Plan, in the instant case, in violating the terms of the plan, in violating ERISA, and in violating Federal, state, and local anti-discrimination laws.

201.    It is believed and therefore averred that Defendants breached duties owed to Plaintiff.

202.    Defendants improperly denied health insurance benefits sought by Plaintiff due to discrimination on account of Plaintiff's gender identity.

203.    Defendants incorrectly applied the terms of the Plan and improperly denied benefits to Plaintiff as Defendants' Policy provides:

The Member has the right to receive health care services without discrimination

based on race, ethnicity, age, mental or physical disability, genetic information, color, religion, gender, national origin, source of payment, sexual orientation, or sex, including stereotypes and gender identity, for Medically Necessary health services made available on the same terms for all individuals, regardless of sex assigned at birth, gender identity, or recorded gender; Based on an individual's sex assigned at birth, gender identity, or recorded gender, if it is different from the one to which such health service is ordinarily available; Related to gender transition if such denial or limitation results in discriminating against a transgender individual.

204.   In the alternative, if necessary, Defendants each constitute a non- fiduciary for purposes of § 502(a)(3) as defined in ERISA in the instant case.

205.   Plaintiff seeks to recover from Defendants in this cause of action as follows:

   a.   Declaratory and equitable/injunctive relief requiring Defendants to insure Plaintiff and other transgender people with gender dysphoria for facial feminization surgeries and related procedures on an equal and non-discriminatory basis; to adopt and enforce a written policy, procedure, or guideline to this effect; and to immediately order a re-evaluation of Plaintiff's claim for the purposes of evaluating Plaintiff's claim on an equal and non-discriminatory basis;

   b.   Declaratory and equitable/injunctive relief providing that Plaintiff is covered for all FFS and related procedures wrongfully denied, and providing that Plaintiff will be covered and all benefits paid moving forward;

   c.   Repayment of premiums paid by Plaintiff out of Plaintiff's pay with Drexel University;

   d.   Back benefits or the economic value of the payment of all benefits wrongfully denied by the Defendants;

   e.   Any out-of-pocket expenses which may include expenses related to travel,

transportation, accommodations, and related expenses;

f.     Any other out-of-pocket expenses and/or economic damages incurred by
       Plaintiff the recovery of which would place the Plaintiff in the same
       position but for the discrimination against her;

g.     An award of reasonable attorneys' fees and costs;

h.     Pre- and post-judgment interest;

i.     Any other equitable relief.

**COUNT X:**
**INSURANCE BAD FAITH IN VIOLATION OF 42 Pa. C.S. § 8371**
**(PLAINTIFF, JANE DOE v. DEFENDANTS, DREXEL UNIVERSITY,**
**INDEPENDENCE BLUE CROSS, AND QCC INSURANCE COMPANY)**

206.   Ms. Doe restates and realleges all previous paragraphs as though fully set forth here.

207.   A contract of insurance existed between Plaintiff and Defendants.

208.   Plaintiff qualifies as an "insured" under the definition supplied in 42 Pa. C.S. § 8371.

209.   Defendants each qualified as an "insurer" under the definition supplied in 42 Pa. C.S.
       § 8371.

210.   Plaintiff fulfilled her part of the insurance contract by purchasing the policy, and having
       her percentage or portion of the payment of the insurance premiums withheld from each
       of her paychecks with Drexel.

211.   By failing to cover Plaintiff for facial feminization surgeries and related procedures, in
       clear violation of Defendants' own policies, medical bulletins, and/or references, and on
       account of discrimination against the Plaintiff, Defendants have violated 42 Pa. C.S. §
       8371, and have made a large profit at the Plaintiff's expense.

212.   It is well-established law that an action for bad faith may extend to an insurer's
       investigative practices.  See O'Donnell ex rel. Mitro v. Allstate Ins. Co., 1999 Pa. Super.

161, 734 A.2d 901 (Pa. Super. 1999); Grossi v. Travelers Personal Ins. Co., 79 A.3d 1141 (Pa. Super. 2013); Bodnar v. Nationwide Mut. Ins. Co., 2013 WL 2147807 (M.D. Pa. May 16, 2013).

213.   Defendants had a duty to consider the good faith interests of its insured as a factor in coming to the decision as to whether to cover the Plaintiff's claim.

214.   Defendants owed to Plaintiff a duty to give her interests the same faithful consideration that Defendants gave Defendants' own interests.

215.   Defendants owed a legal duty to Plaintiff, including the duty to timely investigate, evaluate, cover, and pay the claim within the policy provisions.

216.   Defendants owed a legal duty to Plaintiff to timely investigate, evaluate, cover, and pay the claim within the policy provisions, and an equal and non-discriminatory basis.

217.   Defendants owed a legal duty to Plaintiff not to discriminate against Plaintiff by denying coverage based on her gender identity or based on unlawful gender-based stereotypes.

218.   Defendants breached these duties by the discriminatory conduct as described at length above.

219.   Defendant, IBX and QCC's, claims agents and representatives misgendered the Plaintiff with incorrect pronouns and the name that was not the Plaintiff's preferred name.

220.   Defendants' unlawful discrimination and the unlawful denial of insurance coverage to Plaintiff caused her to consider suicide.

221.   The wanton disregard for Plaintiff's rights constitutes bad faith.

222.   Based upon the facts pleaded above, Defendants lacked a reasonable basis for the

following actions and omissions in violation of 42 Pa. C.S.A. § 8371, and acted

recklessly and in conscious disregard of the facts, law, and obligations at issue,

including:

    a.     Failing to properly evaluate Plaintiff's claim;

    b.     Failing to cover and pay Plaintiff's claim and the claims of other

               individuals who are transgender with gender dysphoria on account of

               discrimination;

    c.     Failing to timely process Plaintiff's claim;

    d.     Misgendering Plaintiff based on her gender identity and based on

               impermissible gender-based stereotypes;

    e.     Making discriminatory or inappropriate remarks to Plaintiff;

    f.     By their actions causing Plaintiff to consider suicide;

    g.     Conducting an investigation, evaluation and assessment with the purpose

               and effect of protecting and serving Defendants' own interests, rather than

               providing proper and faithful consideration to the Plaintiff's interests;

    h.     Failure to adhere to policies, guides, procedures, and practices with

               regard to claims investigations and claims handling;

    i.     Implementing and pursuing a claims handling/litigation policy and

               strategy with the design and purpose of deterring claims rather than

               protecting the interests of their insureds;

    j.     Breaching known legal duties to the Plaintiff out of financial self-interests;

    k.     Failing to pay a covered claim promptly and jeopardizing the financial

               security of Plaintiff with full knowledge that Defendants' actions were

causing such a result;

l.    Considering improper and impermissible criteria in the evaluation of Plaintiff's claim;

m.    Failing to train claims handling personnel properly;

n.    Failing to obtain qualified personnel;

o.    Continuing to employ delay tactics;

p.    Exhibiting a pattern and practice of engaging in unfair or deceptive acts or practices to benefit the interests of Defendants to the detriment and expense of the Plaintiff;

q.    Failing to cover and/or pay the claim within a reasonable period of time;

223.    Plaintiff believes, and therefore avers, that Defendants violated the terms and conditions of the insurance contract and the applicable laws of Pennsylvania for the reasons stated above.

224.    It is believed and averred that Defendants' actions and/or inactions have been done with malice and in complete disregard for Plaintiff, Plaintiff's interests, Plaintiff's rights, and Plaintiff's health and safety.

225.    The instant cause of action has been permitted by multiple courts, including two (2) reported decisions in Kirkuff v. Lincoln Technical Institute, Inc., 221 F. Supp. 2d 572, 575-76 (E.D. Pa. 2002) (Bartle, J.), and Stone v. Disability Management Services, Inc., 288 F. Supp. 2d 684 (M.D. Pa. 2003) (Munley, J.), and an unreported decision of the Eastern District of Pennsylvania in Rosenbaum v. UNUM Life Insurance Company, No. 01-6458, 2002 WL 1769899, at *1-3 (E.D. Pa. July 29, 2002).

226.   The Court of Appeals for the Third Circuit has *not* determined that the instant claim of bad faith is preempted by ERISA, and Plaintiff's position is further supported by the decision of the Supreme Court of Pennsylvania in <u>The Birth Center v. St. Paul Companies, Inc.</u>, 567 Pa. 386, 787 A.2d 376 (Pa. 2001).

227.   Plaintiff was directly and proximately caused by Defendants to suffer damages including actual damages, out-of-pocket expenses, compensatory damages, and Defendants' conduct warrants punitive damages.

## <u>RELIEF REQUESTED</u>

228.   Plaintiff seeks the following damages or other relief from the Defendants in this action individually and/or jointly and severally, on account of the Defendants' illegal and discriminatory acts, to the extent permitted by applicable law:

   a.   Plaintiff seeks economic damages for lost wages and benefits from Defendants for premium pay, or premium amounts paid by Plaintiff out of Plaintiff's pay from Drexel University, which were collected for insurance coverage which did not cover the Plaintiff's legitimate claim on account of illegal discrimination.   Plaintiff claims the value of the premiums or benefits wrongfully withheld by Defendants.

   b.   Actual damages;

   c.   Out-of-pocket costs and expenses;

   d.   Incidental damages;

   e.   Consequential damages;

   f.   Economic damages;

   g.   Compensatory damages including but not limited to humiliation and

embarrassment, pain and suffering, loss of enjoyment of life and life's pleasures, exacerbated gender dysphoria ("GD"), negative body image and negative self-view, suicide ideation, psychological trauma, mental anguish, and emotional distress, under Title VII, Title IX, the PFPO, the ADA, and Plaintiff's bad faith claim.

h. Punitive damages under Title VII, the PFPO, the ADA, and Plaintiff's bad faith claim.

i. Damages for insurance bad faith under 42 Pa. C. S. § 8371 in the amount of interest (prime rate) plus 3%;

j. An award of reasonable attorneys' fees, reasonable expert fees, and the costs and expenses incurred in this action, pursuant to 42 U.S.C. § 1988, and/or as otherwise provided by applicable law;

k. Pre- and post-judgment interest;

l. An order from the Court for equitable or injunctive relief to require the Defendants to insure Plaintiff and other people who are transgender with gender dysphoria for facial feminization surgeries on an equal and non-discriminatory basis; to adopt and enforce a written policy, procedure, or guideline to this effect; and to perform necessary training and education related thereto;

m. An order for the Defendants to perform a re-evaluation of Plaintiff's claim, providing that Plaintiff is covered for all FFS and related procedures wrongfully denied, and providing that Plaintiff will be covered and all benefits paid moving forward;

n.      An order for Defendants to hold LGBT sensitivity trainings for employees, claims agents, representatives, and specialists;

o.      An order that Defendant, Drexel University, will review and update the descriptions of its Title IX Coordinator, Chief Diversity Officer and Chief Human Resource Officer, and any designee's/s' responsibilities and corresponding training requirements; the University will review and update the descriptions of how and where to report discrimination; and require training on the revised procedures;

p.      Any such further relief as the Court may deem just, proper, and equitable.

## **JURY DEMAND**

Plaintiff hereby requests a trial by jury of eight (8) members on all counts so triable.

Respectfully submitted,

DATED: 09/13/2023      BY:      */s/ Justin Robinette, Esquire*
                                       Justin Robinette, Esquire (I.D. # 319829)
                                       P.O. Box 15190
                                       Philadelphia, PA 19130-9998
                                       Tel: (267) 595-6254
                                       Fax: (267) 592-3067
                                       justin@jrobinettelaw.com

## <u>VERIFICATION</u>

      I certify that I am the Plaintiff in the within action, and that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information, and belief. I understand that the statements made herein are subject to the penalties of 18 Pa. C.S.A. § 4904 relating to unsworn falsifications to authorities. I declare under penalty of perjury that the foregoing is true and correct in accordance with 28 U.S.C. § 1746.

Dated: Sep 12, 2023      By: _____

## **CERTIFICATE OF SERVICE**

I, <u>Justin Robinette, Esquire</u>, attorney for the Plaintiff in the above captioned matter,

hereby certify that a true and correct copy of the foregoing document was filed with the Court

and served together with the Court-issued Summons by personal service/hand delivery to each

Defendant on the date set forth below, or as soon thereafter as service can be effectuated.

Respectfully submitted,

DATED: <u>09/13/2023</u>          BY:     <u>*/s/ Justin Robinette, Esquire*</u>
                                        Justin Robinette, Esquire
                                        *Attorney for Plaintiff*